# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

**UNITED STATES OF AMERICA,**

**v.**

**LYNDELL LEROY PRICE**

**Defendant.**

**CASE NO. 4:24-CR-565-S**

## GOVERNMENT'S *AMENDED* RESPONSE TO DEFENDANT'S MOTION TO DISMISS INDICTMENT WITH PREJUDICE OR IN THE ALTERNATIVE TO SUPPRESS EVIDENCE

The United States of America respectfully files this motion requesting this Court deny the Defendant's motion to dismiss the indictment with prejudice or suppress evidence, and in support thereof would show the following:

## FACTUAL BACKGROUND

The Government offers the following facts to clarify, supplement, and correct factual inaccuracies in the Factual Background provided in the Defendant's Motion.

1.  Letitia D. Quinones-Hollins, Esq. ("Attorney Quinones-Hollins") represented Lyndell Leroy Price [hereinafter "Defendant"] in the following criminal matters in Harris County and the Southern District of Texas:

- 2005:  Arson (Harris County)

- 2015:  Family member assault (Harris County)

- 2016:  Federal Tax Fraud (SDTX), U.S. v. Lyndell Leroy Price, 4:14-cr-578

- 2021:  Aggravated Assault (Harris County)

2.  The Defendant's motion alleges that as recently as August 2020, he was represented by

Attorney Quinones-Hollins in *U.S. v. Lyndell Price*, et. al, 4:14-cr-578.  This is inaccurate. Attorney Quinones-Hollins filed an appearance in the federal tax fraud case on August 27, 2015. She was the Defendant's sole representative in the substantive portion of the case.   On March 18, 2016, the Defendant pled guilty pursuant to a plea agreement signed by Attorney Quinones-Hollins and no other defense counsel.   On August 19, 2016, the Defendant was sentenced at a hearing attended only by Letitia Quinones-Hollins as his defense attorney.

3.   Robert Jones, Esq. ("Attorney Jones") appeared as a counsel of record for Lyndell Price in the aforementioned federal tax fraud case - on March 26, 2020, when he filed a Motion for Early Termination of Probation on behalf of the Defendant.   Notably, Attorney Quinones-Hollins 1) is not a signatory to this motion; 2) was never contacted by the Defendant about representing him in this early termination matter; and 3) never did any work on this matter and was never paid for any of the work done by Attorney Jones in this matter. The early termination motion filed by Attorney Jones was granted on August 13, 2020.

4.   Accordingly, contrary to the Defendant's erroneous factual assertion in his motion, the Defendant was represented by Attorney Jones (not Attorney Quinones-Hollins) in the federal tax prosecution when crimes took place from approximately April 2020 through June 2020 that form the basis for the present indictment.

5.   Attorney Quinones-Hollins did not represent the Defendant on any legal matters after a 2021 aggravated assault charge in Harris County.   Prior to this incident, she last represented him in his 2016 federal tax fraud case.   In November 2021, Attorney Quinones-Hollins and the Defendant came to a mutual understanding that she would not represent him in future legal matters. With the exception of the 2021 Harris County aggravated assault case, from 2020 to 2024, either Attorney Jones, Attorney Donale Evans, or Attorney Denise Purcell represented the Defendant in

several Harris County civil and criminal matters involving harassing communications, assault, liquor sales without a permit, and a federal lawsuit. In fact, Attorney Jones has represented the Defendant in multiple cases from 2004 through 2024.

6.    The Defendant alleges in his motion that Attorney Quinones-Hollins contacted the FBI on his behalf in 2022 or 2023.   This is inaccurate.   The only contact FBI agents made with the Defendant prior to his arrest on April 24, 2025, was during surveillance conducted at the Defendant's residence in 2022 or 2023.   During this encounter, the Defendant approached SA Brian Ritchie's vehicle with Attorney Jones and Attorney Quinones-Hollins already on the Defendant's phone.   Attorney Quinones-Hollins did not ask why the Defendant called her and did not expect a call from the Defendant in light of their mutual understanding in November 2021 that she would not be representing him in future legal matters.

7.    When asked by Attorney Jones or Attorney Quinones-Hollins what he was doing at the Defendant's home, SA Brian Ritchie replied that he was establishing a "pattern of life" on the Defendant.   SA Ritchie did not disclose the existence of the federal arson investigation to either Attorney Jones or Attorney Quinones-Hollins.   Neither prior to nor after speaking to SA Brian Ritchie did Attorney Quinones-Hollins become aware that the Defendant was under investigation for federal arson, and she was never advised as such by the Defendant.   Following the phone call with SA Ritchie, Attorney Quinones-Hollins had no subsequent discussion with the Defendant or an FBI agent about a federal arson investigation and remained in the dark about the Defendant's status as a suspect.

8.    Attorney Quinones-Hollis did not learn that the Defendant was under investigation for federal arson until April 2024, five months after co-defendant John Lee Price's ("JLP"'s) arrest on November 2023 in Mississippi on unrelated federal drug charges.   JLP initially retained Attorney

Carl Moore, Esq. ("Attorney Moore") who then brought on Attorney Quinones-Hollins to assist in JLP's defense in the federal drug case. JLP was first interviewed about the Bar 5015 arson on April 12, 2024. After it was explained to Attorney Quinones-Hollins and JLP that the Southern District of Mississippi defined full cooperation to require providing all information related to any known criminal activity, JLP was interviewed about the Bar 5015 arson with Attorney Quinones-Hollins present.

9. Throughout the period of the federal arson investigation, the Defendant advised JLP, and reportedly others, that Attorney Jones represents him (the Defendant), and on a few occasions, the Defendant advised JLP to call Attorney Moore [the Defendant's business partner in the Turkey Leg Hut] or Attorney Jones to assist JLP in matters related to the federal arson investigation. The Defendant never told JLP that he was represented by Attorney Quinones-Hollins. JLP did not know of and had never met Attorney Quinones-Hollins until after his arrest on federal drug charges in November 2023 in Mississippi.

10. Notably, the Defendant's wife, Nakia Price, was represented by Attorney Jones when she was interviewed by a federal agent just 13 days after the Bar 5015 arson. Mrs. Price advised federal agents that Attorney Jones was always the attorney who represented her and the Defendant on the Bar 5015 matter. Notably, Attorney Jones was present at the Defendant's detention hearing on May 1, 2025. But for his alleged financial woes that provided the basis for court appointed counsel, the Defendant would have likely retained Attorney Jones to represent him in this matter.

11. During the course of the federal arson investigation, the government interviewed two witnesses who were close friends of the Defendant. Attorney Jones attended both of those interviews. During both interviews, Attorney Jones mentioned that he might have a conflict of interest as the discussion turned towards the Bar 5015 arson, and in one interview, Attorney Jones

mentioned his representation of someone else related to the investigation.

12. In August or September 2022, the FBI went to the residence of JLP to execute a warrant authorizing the collection of DNA.   After knocking on JLP's door, the FBI heard him inside on the phone with the Defendant.   During this phone call, the Defendant told JLP to call Attorney Moore.   JLP opened the door to his residence after he was able to get Attorney Moore on the phone to speak to FBI agents.

13. JLP again called the Defendant after federal agents spoke to the mother of his child in connection with the federal arson investigation.   The Defendant again advised JLP to call Attorney Moore or Attorney Jones.

14. Following JLP's arrest on federal drug charges in November 2023 in Mississippi, the Defendant advised JLP's parents that he gave money to Attorney Moore to represent JLP.   This statement was false.

15. During the course of the federal arson investigation, the Defendant would ask JLP about the other co-conspirators to determine how that were "holding up."

16. JLP was interviewed by federal agents in Mississippi after his November 2023 arrest. The Defendant states in his motion that Assistant United States Attorney Sebastian Edwards attended this interview in Mississippi.   This is inaccurate.   AUSA Edwards appeared by phone.

17. During JLP's interview, Attorney Quinones-Hollins alerted the Government to her prior representation of the Defendant in the 2016 federal tax case and her desire to avoid any conflicts of interest.   Government counsel advised Attorney Quinones-Hollins that we did not assess a conflict of interest because the federal tax fraud case was a separate and unrelated matter that concluded in 2016.   Importantly, the Defendant was sentenced pursuant to a plea agreement in which he waived his right to appeal his conviction and sentence.

18. The Defendant's counsel raised the attorney conflict of interest issue at the detention hearing on May 1, 2025.   Notably, Attorney Jones was present as a spectator at this hearing and approached the Defendant and his appointed counsel to speak with them at the conclusion of the detention hearing.   As a result of the defense raising the conflict of interest issue at the detention hearing, Government counsel advised Attorney Quinones-Hollins of the Defendant's attempt to allege a conflict of interest on her part.    At that time, Attorney Quinones-Hollins stated that she would speak to Attorney Moore and their client, JLP, to determine if withdrawal from the case was appropriate in order to avoid even the appearance of a conflict of interest.

## ARGUMENT

### No Attorney-Client Relationship in Bar 5015 Matter

The Defendant falsely claims that Attorney Quinones-Hollins represented him at one point in the Bar 5015 arson investigation and that this representation constitutes a joint representation that is an actual conflict of interest that violates his Fifth and Sixth Amendment rights.

An attorney-client relationship arises by express agreement or by implication from the parties' actions.  *See First National Bank of Durant v. Trans Terra Corps International*, 142 F.3d 802, 807 (5th Cir. 1998) (citing *Banc One Capital Partners v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995, which held that neither an express nor implied attorney-client relationship existed based on a single letter addressed to plaintiff and purporting to give an opinion solely for their benefit.)

During the course of the Bar 5015 investigation, Attorney Quinones-Hollins participated in a single phone call with an FBI agent conducting surveillance at the Defendant's residence. Neither before, during, nor after this phone call did Attorney Quinones-Hollins speak to the Defendant about representing him in an arson investigation.   Attorney Quinones-Hollins did not know why she was being asked by the Defendant to speak to SA Brian Ritchie, along with Attorney

Jones, and was only advised by the FBI agent that he was "establishing a pattern of life" on the Defendant.   Attorney Quinones-Hollins never entered into any express or implied agreement with the Defendant to represent him in the arson investigation, and she never performed any acts with the intent to represent him in the matter.   Attorney Quinones-Hollins last represented the Defendant in his 2021 aggravated assault prosecution and came to a mutual understanding with him in November 2021 that she would no longer be representing him going forward.   The Defendant attempts, in his motion, to extend Attorney Quinones-Hollins' representation of him in the federal tax fraud prosecution to the conclusion of the term of his supervised release.   This is a self-serving attempt to manufacture an attorney client relationship during the period the Defendant was engaging in both arsons charged in the indictment.   In reality, no attorney client relationship existed that the Defendant can now rely on to attempt to defeat his current arson charges.

Attorney Jones, on the other hand, was held out by the Defendant on multiple occasions to be his attorney in the Bar 5015 arson investigation.   The Defendant's now estranged wife was represented by Attorney Jones during an interview approximately two weeks after the Bar 5015 arson.   She has also advised FBI agents that Attorney Jones was the lawyer for the Defendant in the arson matter.   Additionally, the Defendant told JLP and reportedly others that Attorney Jones was his lawyer.   He also advised JLP to call Attorney Jones (or Attorney Moore) to represent him during different events related to the Bar 5015 investigation.   Curiously, Attorney Jones showed up for multiple FBI interviews of close friends and associates of the Defendant, each time referring to a potential conflict of interest when the subject of the interview turned to the Bar 5015 arson matter.

The Government can only infer that the Defendant was advising his friends and associates to use Attorney Jones as their representative to aid the Defendant in keeping tabs on the federal

arson investigation.    The Defendant did such a good job holding Attorney Jones out as his attorney that even the media connected Attorney Jones to the Defendant in the Bar 5015 investigation:



BREAKING NEWS

Former Turkey Leg Hut owner Lynn Price, two others indicted on federal arson charges

The Defendant cannot have it both ways.    He cannot use Attorney Jones to keep watch on a federal investigation into his crimes and then disclaim this association in order to defeat a federal indictment by now claiming Attorney Quinones-Hollins as his counsel in the Bar 515 arson prosecution.    Our rules governing professional responsibility cannot so easily be manipulated.

**No Successive Conflict of Interest**

Attorney Quinones-Hollins' prior representation of the Defendant does not create an actual conflict because it is unrelated to the Bar 5015 arson prosecution.

The burden of proving a conflict of interest that requires disqualification is borne by the party seeking disqualification, which, in this case, is the Defense.  *Wheat v. United States*, 486

U.S. 153, 164 (1988).

The Sixth Amendment's guarantee of the right to counsel includes the "right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985). Conflicts of interest can arise in many contexts, although all share the same essential feature, which is the prospect that counsel may suffer some impairment that implicates the ability to give the client undivided loyalty and effort. Frequently, this impairment arises from counsel's efforts to represent multiple clients whose interests are not precisely identical. The most frequent conflicts of interest involve multiple representation, that is, the representation of more than one interest. Multiple representation may involve joint representation and/or **successive representation**.

Analysis of attorney disqualification is guided "by state and national ethical standards adopted by the court." *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).

As to successive representation, which applies in the instant case, Rule 1.9 of the ABA Model Rules of Professional Responsibility provides that *"a lawyer who has formerly represented a client in a matter shall not thereafter represent another person **in the same or a substantially related matter in which that person's interests are materially adverse** to the interests of the former client unless the former client gives informed consent, confirmed in writing."* Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct mirrors this language.

The substantial relationship test embodied in this Rule has two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify, and (2) a 'substantial relationship' between the subject matter of the former and present representations. *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992).

In *Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000), the Fifth Circuit advised that a conflict may exist in a successive representation scenario when an attorney has confidential information that is helpful to one client but harmful to another.   The *Perillo* court outlined several factors it considers in its analysis of actual conflicts when a successive representation is at issue: 1) the relationship between the subject matter of the multiple representations; 2) the temporal relationship between the prior and subsequent representation; and 3) the character and extent of the prior representation.   Id. at 798-99.   The Fifth Circuit also "relie[s] upon the 'substantial relationship' test when reviewing a former client's motion to disqualify counsel from pursuing successive and potentially adverse representation of another client in civil cases." *Id.* at 800 (citing *In re American Airlines*, 972 F.2d 605, 614–16 (5th Cir.1992)).

Attorney Quinones-Hollins previously represented the Defendant in a 2005 arson case, a 2015 family member assault, a 2016 federal tax fraud case, and a 2021 aggravated assault case. Applying Rule 1.09 of the Texas Disciplinary Rules of Professional Conduct and the factors articulated in *Perillo*, it is clear that no actual conflict exists in Attorney Quinones-Hollins representation of JLP in the instant case.

The Defendant's prior cases are not substantially related to the current matter.   The subject matter is different, there are no common defendants or witnesses, and Attorney Quinones last represented the Defendant three years before learning that the Defendant was a suspect in the federal arson investigation. Attorney Quinones-Hollins last represented the Defendant in 2021, the same year they reached a mutual understanding that she would not represent him in the future. Thus, the temporal relationship between the successive representations is remote.   Although Attorney Quinones-Hollins' prior representation of the Defendant was extensive, because those matters are so unrelated and separated by three years, it is highly improbable that she possesses

confidential information that would benefit JLP.

### Dismissal of Indictment or Suppression of Evidence Not Appropriate

The Defendant has put the proverbial cart before the horse in asking this Court to dismiss the Government's indictment.   He asks for this extraordinary remedy without citing to any authority that allows it.   Assuming an actual conflict did exist, the appropriate remedy at this stage of the case would be disqualification of JLP's present defense counsel.   The Defendant, however, has failed to demonstrate any relationship between the subject matter of Attorney Quinones-Hollins' former representation of him and her present representation of JLP in the Bar 5015 arson prosecution.

### Hearing is Necessary to Determine
### Whether a Potential or Actual Conflict of Interest Exists

When a defense counsel has an apparent conflict of interest, the trial court should hold a hearing in accordance with the Fifth Circuit seminal decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975). "A resolution of the problem requires a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness." *Id.* at 273.

If the hearing evidences the existence of a conflict of interest, the trial court must ensure that the defendant is fully apprised of the ramifications of the conflict. Should a defendant desire to waive the conflict, the trial court must establish on the record that the defendant knowingly, intelligently and voluntarily waives the inherent disqualification. *Id.* at 274. Notwithstanding such a waiver, the district court must also evaluate and determine whether the conflict is so severe as to render a trial inherently unfair, whether proceeding with the conflict undermines the integrity of the judicial system or whether proceeding with the conflict will deprive the defendant of his right to effective assistance of counsel. *United States v. Rico*, 51 F.3d 495, 511 (5th Cir. 1995); *United*

*States v. Vaquero*, 997 F.3d 78, 90 (5th Cir. 1993).

<u>**CONCLUSION**</u>

For all the foregoing reasons, the Government respectfully requests that this Court deny the Defendant's motion to dismiss the present indictment or suppress evidence derived from JLP. The Government also requests that this Court set this matter for a hearing to determine whether (1) a potential or actual conflict exists and (2) whether Attorney Quinones-Hollins and Attorney Moore should remain as JLP's counsel.

Date:   May 20, 2025                    Respectfully submitted,

                                        NICHOLAS J. GANJEI
                                        United States Attorney
                                        Southern District of Texas


                            By:     *Sebastian Edwards*
                                    Sebastian A. Edwards
                                    Keri Fuller
                                    Assistant United States Attorneys
                                    1000 Louisiana Street, 24th Floor
                                    Houston, Texas 77002
                                    Tel.: (713) 567-9503; FAX: (713) 718-3303